**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ERIC TOLLIVER,

                                        Petitioner,

                - v -                                        Civ. No. 9:02-CV-0570
                                                                    (LEK/RFT)

CHARLES GREINER,

                                        Respondent.


**APPEARANCES:**                                        **OF COUNSEL:**

ERIC TOLLIVER
Petitioner, *pro se*
94-B-1563
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821-0051

HON. ELIOT SPITZER                                        PATRICK F. MACRAE, ESQ.
Attorney General of the State of New York                Assistant Attorney General
Office of the Attorney General–Syracuse Division
615 Erie Boulevard West
Suite 102
Syracuse, New York 13204

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION and ORDER

        In 1994, *pro se* Petitioner Eric Tolliver was convicted in Onondaga County Court of one

count each of second degree murder and criminal possession of a weapon.  Petitioner presently

seeks an order granting his Application for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254.

Dkt. No. 6, Am. Pet.  In support of his Amended Petition, Tolliver asserts that his conviction is

invalid and should be vacated because: (1) he was denied the effective assistance of counsel; (2) he

was denied his right to be present at all material stages of his trial; (3) the prosecutor engaged in

misconduct during the course of the criminal trial below; and (4) he was denied his constitutional

right to a fair trial.[1]  Am. Pet.  For the reasons that follow, this Court recommends that the Amended

Petition be **denied**.

# I.  BACKGROUND

According to the testimony adduced at trial, on the evening of November 21, 1993, Kayan

Simpson was taking a nap with her husband, Talbert Simpson, at the home of Tammy Randell,

when Petitioner Eric Tolliver entered the bedroom and awoke Talbert Simpson.  *See* Transcript of

Trial of Gerald Anthony King a/k/a Eric Tolliver (6/13/94) ("Trial Tr.") at pp. 498-99.[2]  Talbert

Simpson then agreed to accompany Tolliver and some friends to a tavern for drinks, and soon

thereafter Tolliver, Talbert Simpson, David Daws, and Big Head[3] left Randell's apartment.  *Id*. at p.

499.  Later that evening, Kayan Simpson heard gunshots and shortly thereafter Tolliver returned to

Randell's apartment "look[ing] real nervous." *Id*. at pp. 504-05.  When Kayan Simpson asked

Tolliver what had transpired, he responded that "they got in a fracas with this guy," and Big Head

"shot the guy and [Tolliver] finished it." *Id*. at pp. 505-06.  Tolliver then displayed a gun, removed

some bullets from its barrel and changed his clothes.  *Id*. at p. 506.  Later that same evening, Talbert

Simpson returned to the apartment, after which Tolliver volunteered that he had "shot the guy." *Id*.

at p. 508.  When Talbert Simpson stated that Daws had indicated that the victim, Marshall Solomon,

was not dead, Tolliver disagreed, stating "yes, he was, he's dead." *Id*. at pp. 508 & 605.  Talbert

Simpson testified that when he asked Tolliver how many times he had shot the victim, he responded

---

[1] This matter has been referred to this Court for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

[2] Kayan Simpson referred to Tolliver as "Barry."  Trial Tr. at p. 488.

[3] "Big Head" was a nickname for Clifton Gordon.  Trial Tr. at p. 610.

"seven or eight" times. *Id*. at pp. 641-42.[4]

Tolliver was subsequently charged by an Onondaga County grand jury with the crimes of second degree murder and second degree criminal possession of a weapon. *See* Indictment No. 94-42-1 ("Indictment") (reproduced in Jt. App. at p. H1477). Beginning on June 13, 1994, Tolliver was tried before a jury on those charges in Onondaga County Court with the Honorable William J. Burke, Onondaga County Court Judge, presiding. At the conclusion of his trial, Tolliver was found guilty of both counts. Trial Tr. at p. 1069. Judge Burke thereafter sentenced Tolliver to an indeterminate term of twenty-five (25) years to life imprisonment on the murder conviction, and a lesser, concurrent sentence on the weapons possession conviction. *See* Transcript of Sentencing of Eric D. Tolliver (7/1/94) at p. 5.

On January 20, 1995, Tolliver filed a Motion to Vacate his Judgment of Conviction pursuant to New York's Criminal Procedure Law ("CPL"), Section 440.10 ("January 1995 CPL Motion"). In that application, Tolliver argued, *inter alia*, that his trial counsel rendered ineffective assistance because he failed to consult with a ballistics expert or utilize such an expert at trial. *See* January, 1995 CPL Motion at (unnumbered) pp. 10-11. The County Court denied that application by an order, dated March 30, 1995, and the Appellate Division thereafter denied Tolliver's application for leave to appeal that decision. Dkt. No. 16, Ex. 13.

Tolliver also pursued a direct appeal of his conviction and sentence with the New York State Supreme Court, Appellate Division, Fourth Department. *See* Appellate Brief (2/9/95) ("Initial App. Br."). In its decision, dated July 14, 1995, the Fourth Department affirmed Tolliver's conviction and sentence, *People v. Tolliver*, 630 N.Y.S.2d 181 (N.Y. App. Div., 4th Dep't 1995), and the Court

---

[4] The victim eventually died of multiple gunshot wounds. Trial Tr. at pp. 605-07.

of Appeals thereafter denied Tolliver's application for leave to appeal, *People v. Tolliver*, 658 N.E.2d 234 (N.Y. 1995).

On July 23, 1997, Tolliver filed an application seeking a writ of error *coram nobis* in which he alleged he had received ineffective assistance of appellate counsel. *See* Jt. App. at pp. H1497-1596. That application was opposed by the District Attorney and by an order, dated September 30, 1997, the Appellate Division determined that one of the grounds asserted in Tolliver's *coram nobis* petition – which argued that he was improperly excluded from certain sidebar discussions during the jury *voir dire* – might have merit. *People v. Tolliver*, 670 N.Y.S.2d 374 (N.Y. App. Div., 4th Dep't 1997). Therefore, the Fourth Department vacated its prior order affirming the conviction and granted Tolliver a *de novo* appeal. *Id*. at 374.

In his brief filed in support of the *de novo* appeal, appellate counsel argued that: (i) the trial court erred in improperly conducting portions of the jury *voir dire* without ensuring Tolliver's presence at those conferences; (ii) Tolliver received ineffective assistance of trial counsel; (iii) prosecutorial misconduct deprived Tolliver of his right to a fair trial; (iv) the conviction was against the weight of the evidence; (v) the cumulative effect of the errors that occurred during the course of Tolliver's trial deprived him of his right to a fair trial; and (vi) the sentence imposed on Tolliver was harsh and excessive. *See De Novo* App. Br. (6/8/99) at pp. 7-28. The District Attorney opposed that appeal, and by an order, dated December 30, 1999, the Appellate Division affirmed Tolliver's convictions and sentences in all respects. *People v. Tolliver*, 701 N.Y.S.2d 206 (N.Y. App. Div., 4th Dep't 1999). The New York State Court of Appeals thereafter denied Tolliver's application for leave to appeal. *People v. Tolliver*, 728 N.E.2d 991 (N.Y. 2000).

A second *coram nobis* application, filed by Tolliver on or about April 24, 2000, was denied

4

by the Fourth Department on June 16, 2000.[5]  *See People v. Tolliver*, 710 N.Y.S.2d 236  (N.Y. App. Div., 4th Dep't 2000).

On August 4, 2000, Tolliver filed his final state court challenge to his conviction in the form of a second CPL § 440 Motion.  *See* Dkt. No. 16, Ex. 32 ("August 2000 CPL Motion").  The District Attorney opposed that motion (Dkt. No. 16, Ex. 33), and by order, dated November 14, 2000, the County Court denied Tolliver's application in all respects (Dkt. No. 16, Ex. 34) ("November 2000 Decision").  The Appellate Division subsequently denied Tolliver's application for leave to appeal the denial of his second CPL § 440 motion.  *See People v. Tolliver*, Nos. KA01-00381, 94-421 (N.Y. App. Div., 4th Dep't 2001).

Petitioner commenced this action on April 25, 2002, after which additional submissions were filed by the parties.  Dkt. Nos. 1, Pet.; 6, Am. Pet.; 17, Resp.'s Mem. of Law.[6]  Although Petitioner was granted permission to file a Traverse in further support of his request for federal *habeas* relief (*see* Dkt. Nos. 18 & 19), he chose not to file that submission.

## II. DISCUSSION

### A.  Exhausted Claims

#### *1.  Standard of Review of Exhausted Claims*

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110

---

[5] This Court was not provided with a copy of Petitioner's April 2000 *Coram Nobis* Application.  However, Respondent provided the Court with the District Attorney's papers in opposition to that application, in which the District Attorney claims that the People received a copy of Tolliver's second *coram nobis* application on April 24, 2000.  *See* Record at p. H1717.

[6] Since Tolliver's Original Petition failed to comply with Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Honorable Lawrence E. Kahn, United States District Judge, directed Petitioner to submit an amended petition if he wished to proceed with his action.  Dkt. No. 4.  Tolliver thereafter filed an Amended Petition, which was approved by this Court.  Dkt. No. 6, Am. Pet.; Dkt. No. 9, Order approving Amended Petition and directing service.

Stat. 1214 (1996) ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a

claim:

> that was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim –
>> 1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the Supreme
>> Court of the United States; or
>> 2) resulted in a decision that was based on an unreasonable determination of the
>> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v.
Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The AEDPA also requires that in any such proceeding "a determination of a factual issue

made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §

2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88

(quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test,

noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant
> habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas
> petition "clearly established" when the state court ruled?  2) If so, was the state court's
> decision "contrary to" that established Supreme Court precedent?  3) If not, did the state
> court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221
F.3d 100, 108-09 (2d Cir. 2000)).

### 2. Substance of Tolliver's Exhausted Claims

#### a. Ineffective Assistance of Counsel

In his first ground, Tolliver argues that he received the ineffective assistance of counsel.

Am. Pet., Ground One.  Specifically, Tolliver claims that his trial attorney wrongfully failed to, *inter*

6

*alia*, (i) object to prosecutorial misconduct; (ii) request that an "obviously biased juror" be stricken from the panel; (iii) challenge the audibility of a tape used as evidence against him; (iv) cross-examine the Medical Examiner who testified on behalf of the prosecution; (v) adequately brief the pre-trial suppression motion filed on Tolliver's behalf; (vi) object to the jurors' exposure to "prejudicial material" not received into evidence; and (vii) request an "interested witness charge." *Id.*

The Sixth Amendment to the United States Constitution provides that: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. To establish a violation of this right to the effective assistance of counsel, a *habeas* petitioner must show both: (i) that counsel's representation fell below an objective standard of reasonableness, measured in the light of the prevailing professional norms; and (ii) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (stating that "the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*). Since the *Strickland* standard is clearly established federal law, as determined by the Supreme Court of the United States, *see Bell v. Cone*, 535 U.S. 685, 693-94 (2002), this Court must determine whether the findings of the state court which denied Tolliver's ineffective assistance claims[7] are contrary to, or involve an unreasonable application of, *Strickland* and its progeny.

_____

[7] The majority of Petitioner's claims in support of his argument that he received ineffective assistance were asserted by him in his *de novo* appeal. *See De Novo* App. Br. at pp. 11-17. Petitioner's claim alleging that the jurors at his trial were improperly exposed to prejudicial material, however, was asserted by Tolliver in his August 2000 CPL Motion. *See* Record at pp. H1728-32.

<u>i. Failure to Object to Prosecutorial Misconduct</u>

The first two theories asserted by Petitioner in support of his ineffective assistance claim allege that his trial counsel wrongfully failed to object to prosecutorial misconduct that occurred during the course of the criminal trial.  Am. Pet., Ground One.  Specifically, he argues that trial counsel failed to object when the prosecutor elicited "improper evidence" at Tolliver's trial.  *Id*. Petitioner also argues that defense counsel wrongfully allowed the prosecutor to utter "improper comments" at trial without any objection by trial counsel.  *Id*.

Tolliver's Amended Petition does not provide any facts in support of his contention that the prosecutor elicited "improper evidence."  *See* Am. Pet., Ground One.  However, in conjunction with this claim, this Court has reviewed the state court record provided by the Respondent.  That review establishes that at trial, defense witness Carlton Clarke testified that Talbert Simpson had made several admissions to Clarke implicating himself in Solomon's homicide while the two were being detained at the Public Safety Building Jail in Syracuse, New York.  Trial Tr. at pp. 803-07.  In Tolliver's *de novo* appeal, appellate counsel claimed that during the prosecution's cross-examination of Clarke, the assistant district attorney improperly asked him why he had failed to inform any officials at the Public Safety building of Talbert Simpson's admissions.  *De Novo* App. Br. at p. 16.  Appellate counsel also argued that the prosecutor improperly elicited testimony from Clarke who claimed that Tolliver had informed him that, if a police officer had attempted to place Petitioner under arrest on the night of the shooting, Petitioner would have killed the officer.  *Id*.; *see also* Trial Tr. at p. 685.

In light of the detailed testimony defense counsel elicited from Clarke regarding his jailhouse conversation with Talbert Simpson (*see* Trial Tr. at pp. 803-08), the question posed to

Clarke on cross-examination about his failure to advise law enforcement agents about his alleged conversation with Talbert Simpson (Trial Tr. at p. 818) may well have been an attempt by the prosecutor to impeach Clarke's credibility.  Thus, Petitioner's counsel did not act in an objectively unreasonable manner by refraining from objecting to that question.[8]  As to Simpson's testimony regarding Tolliver's statement that he would have killed a police officer had one attempted to arrest him on the night Solomon was killed, the court notes that in cross-examining Talbert Simpson, defense counsel elicited testimony that Tolliver ran toward a police car on the night Solomon was shot.  *Id.* at pp. 675-76.  On re-direct examination, the prosecution merely asked Simpson about comments made by Tolliver which related to that incident.  *Id.* at p. 685.  Thus, trial counsel properly refrained from objecting to this aspect of Simpson's testimony.  *E.g.*, *Green v. Herbert*, 2002 WL 1587133, at *14 (S.D.N.Y. July 18, 2002) ("[A] party has the right on redirect 'to explain, clarify and fully elicit [the] question only partially examined' on cross-examination") (quoting *People v. Melendez*, 55 N.Y.2d 445, 451 (1982) (other citations omitted)).

Petitioner also claimed on appeal, and appears to assert in this action, that the prosecutor improperly referred to a lie detector test that had been administered to a prosecution witness.  Am. Pet., Ground One; *De Novo* App. Br. at p. 12; Trial Tr. at p. 813.  Although Petitioner now faults counsel for failing to object to this comment of the prosecutor, this claim appears to overlook the fact that trial counsel's objection to this line of questioning was specifically overruled by the trial court.  Trial Tr. at p. 813.

Thus, Tolliver has not established that trial counsel acted in an objectively unreasonable

---

[8] Additionally, in light of the substantial evidence presented at trial against Tolliver, it is clear that he was not prejudiced by counsel's failure to object to that question.

manner concerning the alleged misconduct of the prosecutor at the time of Tolliver's trial.

Accordingly, he has not established that the Fourth Department's decision rejecting this aspect of

his appeal is either contrary to, or represents an unreasonable application of, *Strickland* and its

progeny.

ii. Failure to Request that a Prospective Juror Be Stricken

Tolliver next argues that trial counsel improperly failed to request that an "obviously biased

juror" be removed from the panel of prospective trial jurors.  Am. Pet., Ground One.  On appeal,

Tolliver noted that a potential juror stated during *voir dire* that he would assume that a person who

illegally possessed a gun would be more likely to have committed a murder.  *De Novo* App. Br. at p.

16.  Petitioner argued on appeal, and appears to assert in this action, that because counsel was aware

that the proof at trial would establish that Tolliver illegally possessed a gun around the time of the

homicide, his trial counsel rendered ineffective assistance by failing to seek the removal of that

juror.

While Petitioner's recitation of the prospective juror's statement is correct, Trial Tr. at p.

176, Petitioner neglects to acknowledge that the potential juror thereafter promised that he would

follow the judge's instructions on the law and apply them to the facts of the case.  *Id.*  In light of

those representations, it does not appear to this Court as though defense counsel could have

succeeded in having that juror stricken from the panel for cause.  *E.g.*, *Chacko v. United States*,

2000 WL 1808662, at *8 (S.D.N.Y. Dec. 11, 2000) (trial counsel not ineffective in seeking to

remove juror that assured court that she "would be able to decide the case on the facts and the law").

Additionally, any decision by counsel to not seek the removal of that potential juror through the

exercise of a peremptory challenge was necessarily a strategic choice on the part of counsel.  *See*

10

*Doleo v. Reynolds*, 2002 WL 922260, at \*4 (S.D.N.Y. May 7, 2002) ("Strategies as to the exercise of peremptories are matters of counsel's intuition, and do not rise to the level of constitutional error."); *see also Romero v. Lynaugh*, 884 F.2d 871, 878 (5th Cir. 1989) ("The selection of a jury is inevitably a call upon experience and intuition. . . . Written records give us only shadows for measuring the quality of such efforts."). As the *Doleo* court sagaciously noted, "[i]t is not the role of the court to second-guess counsel's reasonable strategic decisions at jury selection, especially considering that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Doleo v. Reynolds*, 2002 WL 922260, at \*5 (quoting *Strickland v. Washington*, 466 U.S. at 688); *see also Bonneau v. Scully*, 1991 WL 90739, at \*1 (S.D.N.Y. May 23, 1991) ("[S]trategic choices of trial counsel are virtually unchallengeable in habeas corpus proceedings.") (internal quotation and citation omitted). Since the prospective juror had a criminal record himself, *see* Trial Tr. at p. 186, defense counsel may well have preferred, for strategic reasons, to have that individual on the jury. Petitioner has therefore not demonstrated that the Appellate Division's decision rejecting this appellate claim is either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent.

### iii. Failure to Challenge Audibility of Tape

Petitioner next faults counsel for failing to request an audibility hearing regarding a tape made during the underlying criminal investigation. Am. Pet., Ground One; *De Novo* App. Br. at p. 16. This claim appears to relate to Tolliver's appellate claim regarding a jury request for a transcript of a tape received into evidence. *De Novo* App. Br. at p. 16; Trial Tr. at p. 1066.

The record reflects that during the course of its deliberations, the jury foreperson sent a note

11

to the trial court requesting to "have a transcript of the tape, if not the tape, the VCR, tape transcript." Trial Tr. at p. 1066. The trial court informed the jury that no transcript had been created regarding the contents of the tape, but noted that the jury had been given both a VCR and the tape. *Id.* The jury foreperson did not state at that time that the jury wished to have a transcript of the tape made because it was difficult to understand any portion of the tape. *Id.* Additionally, soon after the trial court responded to the jury's request, the jury arrived at its verdict without any further comment about the tape or reference to its audibility. *Id.* at pp. 1066-68.

Since there is no evidence that the tape was inaudible or that the jury was not able to properly consider that evidence in arriving at its verdict, trial counsel cannot be found to have rendered ineffective assistance by failing to have requested an audibility hearing relating to that tape. Thus, the Fourth Department's decision rejecting this aspect of Tolliver's appeal is neither contrary to, nor represents an unreasonable application of, *Strickland* and its progeny.

### iv. Inadequate Cross-Examination of Medical Examiner

Petitioner next argues that trial counsel rendered ineffective assistance due to his failure to cross-examine the Onondaga County Medical Examiner. Am. Pet., Ground One; *see also* Trial Tr. at p. 607.[9]

However, the substance of the Medical Examiner's testimony was limited to his claim that the victim died of gunshot wounds (Trial Tr. at pp. 605-07), a point conceded by defense counsel (Trial Tr. at p. 990). Additionally, Tolliver's defense to the charges was premised upon his claim that he never shot the victim and never possessed a gun on the night Solomon was shot. *Id.* at p. 899. Petitioner has not alleged how any of the brief testimony provided by the Medical Examiner

---

[9] Defense counsel did not ask the Medical Examiner any questions on cross-examination. Trial Tr. at p. 607.

was damaging in any manner to Tolliver's defense to the charges against him.  Significantly, the Medical Examiner never testified that any of the bullets removed from the body of Solomon were consistent with having been fired from a 9 mm handgun, the type of weapon Tolliver was accused of criminally possessing.  *Compare* Trial Tr. at pp. 603-07 *with* Indictment.

The method of cross-examination is an area of trial strategy which courts generally decline to second-guess.  *United States v. DeFeo*, 1997 WL 3259 (S.D.N.Y.), *aff'd*, 152 F.3d 921 (2d Cir. 1998).  The Second Circuit has consistently declined to deem counsel ineffective "notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised."  *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996) (citing, *inter alia*, *Cuevas v. Henderson*, 801 F.2d 586, 590 (2d Cir. 1986) (questioning that "opened the door" to damaging evidence not ineffectiveness) (other citations omitted); *see also United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) (noting that the decision "whether to engage in cross-examination" is "strategic in nature" and not a basis upon which a claim of ineffective assistance of counsel is properly based).

Since Tolliver testified that he never shot the victim, and the substance of the Medical Examiner's testimony related to the fact that Solomon died of gunshot wounds, Tolliver's trial counsel cannot be found to have rendered ineffective assistance merely because he refrained from cross-examining that witness.  *See*, *e.g.*, *Friedgood v. Keane*, 51 F. Supp. 2d 327, 341 (E.D.N.Y. 1999) (denying *habeas* petition based in part upon claim that trial counsel improperly failed to cross-examine doctor who testified on behalf of the prosecution).  This Court therefore concludes that Petitioner has not demonstrated that the Appellate Division's decision rejecting this claim is either contrary to, or represents an unreasonable application of, Supreme Court precedent.

13

### v. Inadequate Briefing of Motion to Suppress

Petitioner next contends that his trial attorney rendered ineffective assistance in the drafting

of the suppression motion.  Am. Pet., Ground One; *De Novo* App. Br., pp. 14-15.  Although

Petitioner does not articulate in his petition how the suppression motion was inadequate, *see* Am.

Pet., Ground One, he claimed on appeal that trial counsel wrongfully challenged the veracity of the

affidavit provided by the citizen-informant in support of the search warrant, rather than the affidavit

supplied by the police officer in support of that warrant.  *De Novo* App. Br., pp. 14-15.

However, Petitioner has not alleged, in the state courts nor this action, how the affidavit

supplied by the police officer in support of the search warrant was untrue or misleading in any

way.[10]  Trial counsel cannot be found to have rendered ineffective assistance by failing to pursue a

particular strategy – including one seeking the suppression of evidence – where there exists no good

faith basis for pursuing such a challenge.  *People v. Curry*, 741 N.Y.S.2d 324, 329 (N.Y. App. Div.,

3d Dep't 2002).  Since there is no evidence that the affidavit filed by the police in support of the

search warrant was untrue in any way, defense counsel did not render ineffective assistance by

failing to seek the suppression of the evidence obtained pursuant to that warrant by challenging the

veracity of the officer's statements in the warrant application.  Thus, the Fourth Department's

decision rejecting this appellate claim is not contrary to, or an unreasonable application of, relevant

Supreme Court precedent.

### vi. Jurors' Exposure to Prejudicial Material

Petitioner next asserts that his trial counsel improperly failed to object to "juror exposure to

---

[10] This Court was not provided with a copy of the search warrant or any of the affidavits submitted in support of
that application.

prejudicial material that was not received in evidence." Am. Pet., Ground One. Although Tolliver

has not articulated any factual basis for this claim in the present action, he did assert in his August

2000 CPL Motion that during the course of deliberations, the jury foreperson requested "all

photographs." *See* August 2000 CPL Motion at p. 5; Trial Tr. at p. 1067. In response to that

request, the County Court informed the jury that it had been given "all the photographs." Trial Tr.

at p. 1067. Tolliver claimed in his August 2000 CPL Motion, and appears to assert in this matter,

that the above language in the transcript establishes that the trial court permitted the jury to view all

photographs marked for identification at trial – including those not received into evidence – in

violation of Tolliver's due process rights. August 2000 CPL Motion at p. 5.

However, the County Court noted in its November 2000 Decision, denying Tolliver's

August 2000 CPL Motion, that the only evidence in support of Tolliver's claim that the jury had

viewed photographs that were never received into evidence was the trial court's statement that the

jury had been given "all [of] the photographs."[11] *See id.* at p. 2. However, as the County Court

acutely reasoned:

> The fact that the judge's remark occurred in the presence of the defendant and the
> defense attorney without objection supports the reasonable and obvious conclusion that
> the trial judge's statement meant that the jury had been provided with all the
> photographs ***which had been admitted into evidence***.

*Id.* at pp. 2-3 (emphasis added).

As in the state courts below, Tolliver has not presented any evidence in this matter which

supports his claim that the jury viewed any photographs that had not been received into evidence

during the course of Tolliver's trial. Therefore, the Appellate Division's determination rejecting

---

[11] One of the photographs marked for identification at trial but not received into evidence depicted Tolliver
loading a handgun. Trial Tr. at pp. 476-77.

this aspect of Tolliver's claim alleging ineffective assistance is neither contrary to, nor represents an unreasonable application of, *Strickland* and its progeny.

vii. Failure to Request an Interested Witness Charge

Petitioner also faults counsel for failing to request an "interested witness charge." Am. Pet., Ground One. However, the trial court specifically instructed the jury on the definitions of both interested and disinterested witnesses. Trial Tr. at pp. 1036-37. Thus, this aspect of Tolliver's ineffective assistance claim is not supported by the record.

In sum, Tolliver has failed to establish that his attorney rendered ineffective assistance with respect to any of the foregoing theories.[12] He has therefore *a fortiori* failed to demonstrate that the denial of these claims by the state courts is either contrary to, or involves an unreasonable application of, *Strickland* and its progeny. Therefore, this Court recommends that Petitioner's request for *habeas* relief based upon the foregoing theories be **denied**.

*b. Right to be Present*

In his second ground, Tolliver argues that he was improperly denied his right to be present at all material stages of his trial. Am. Pet., Ground Two. In support of this claim, he argues that prospective jurors were improperly questioned outside of his presence during the course of his criminal trial. *Id.*

It is well settled that a criminal defendant's presence at trial is required "to the extent that a fair and just hearing would be thwarted by his absence[.]" *Snyder v. Massachusetts*, 291 U.S. 97, 107-08 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964); *see also Illinois*

---

[12] As will be seen, this Court finds that two of the theories upon which Petitioner's claim alleging ineffective assistance is based were not exhausted by Tolliver. *See infra* Part II.B.

*v. Allen*, 397 U.S. 337, 338 (1970).  This guarantee encompasses the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings," *Faretta v. California*, 422 U.S. 806, 819 n.15 (1975) (citation omitted), and affords the accused the right to attend hearings even at which he is not actually confronting witnesses or evidence against him, *see Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (*per curiam*).  Additionally, the Supreme Court has expressly noted that the jury *voir dire* is a critical stage of the criminal proceeding during which the defendant has a constitutional right to be present.  *Gomez v. United States*, 490 U.S. 858, 873 (1989) (citations omitted).

The Supreme Court, however, has also observed that the right to be present is not absolute; it is triggered only when the defendant's "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder v. Massachusetts*, 291 U.S. at 105-06.  Thus, there is no constitutional right to be present "when presence would be useless, or the benefit but a shadow." *Id.* at 106-07.  Since the right to be present at all material stages of one's trial is clearly established federal law, as determined by the Supreme Court, this Court must determine whether the Fourth Department's decision denying this aspect of Tolliver's appeal is either contrary to, or an unreasonable application of, the above-referenced Supreme Court precedent.  *See Diaz v. United States*, 223 U.S. 442, 455 (1912) (a defendant's right to be present is "scarcely less important to the accused than the right of trial itself"); *see also Evans v. Artuz*, 68 F. Supp. 2d 188, 205 (E.D.N.Y. 1999).

Tolliver has not cited any portion of the jury *voir dire* during which he claims prospective jurors were questioned outside his presence.  *See* Am. Pet., Ground Two.  However, in light of Tolliver's *pro se* status, this Court has reviewed the transcript of the jury *voir dire* to determine

whether there is any support for his claim.  Such review establishes that on two different occasions, prospective jurors spoke with the trial court judge outside the presence of Tolliver.  *See* Trial Tr. at pp. 73-75 & 179-80.[13]

With respect to the first juror questioned by the trial court in the absence of Tolliver, this Court notes that the prosecutor used a peremptory challenge to exclude that prospective juror.  *Id.* at p. 98.  There is no basis for this Court to conclude that the prosecutor would not have exercised that peremptory challenge had Tolliver been present during the brief questioning of the juror, or that the prosecutor's use of a peremptory challenge regarding that individual was improper in any way.

Turning to the second juror, this Court notes that the court *sua sponte* excused that juror from the panel after she candidly volunteered that she was "biased" against the District Attorney's office because she was "disgusted" with the manner in which that office had prosecuted the potential juror's daughter in relation to a narcotics charge.  *Id.* at pp. 179-80.

A criminal defendant's presence at ***every*** stage of the proceedings is not required.  *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (quoting *People v. Mullen*, 403 N.Y.S. 2d 470, 472 (1978) and noting that in *Mullen* the court held that *in camera* questioning of one juror out of the defendant's presence did not constitute a material stage of trial).  Significantly, when there is no indication that the defendant "could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending[,]" the holding of such a hearing in a defendant's absence is consistent with that individual's due process rights.  *Kentucky v. Stincer*, 482 U.S. at 747 (alterations in original); *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002); *see also Bohan v.*

---

[13] Tolliver's counsel was present during both sidebar discussions between the court and the prospective jurors. Trial Tr. at pp. 73 & 179.

*Kuhlmann*, 234 F. Supp. 2d 231, 268 (S.D.N.Y. 2002).

The record conclusively establishes that Tolliver could not have done anything had he been at the brief conferences referenced above. Nor could he have gained anything by attending those sidebars. To the contrary, in light of the prosecution's use of a peremptory challenge as to one of the potential jurors, and the trial court's *sua sponte* dismissal of the other individual, it is clear that neither of these potential jurors could have been seated on the jury that was ultimately chosen to hear the evidence against Tolliver. Since his absence from these conferences did not impact, in any way, Petitioner's opportunity to defend himself against the underlying criminal charges, he has failed to establish that his exclusion from those meetings deprived him of his right to be present at all material stages of his trial. *See Perez v. Greiner*, 2005 WL 613183, at *5 (S.D.N.Y. Mar. 14, 2005); *Cruz v. Artuz*, 2002 WL 1359386, at *12 (E.D.N.Y. June 24, 2002) (citations omitted) (denying *habeas* claim alleging that petitioner's absence from trial court's *in camera* interview of three jurors violated petitioner's right to be present during material stage of trial); *Lyon v. Senkowski*, 109 F. Supp. 2d 125, 138 (W.D.N.Y. 2000) (citing *Rushen v. Spain*, 464 U.S. 114, 119-20 (1983) and denying *habeas* claim where petitioner "made no showing that he was prejudiced because of his absence from the jury interviews").

Since Tolliver has failed to establish that the Fourth Department's decision rejecting this aspect of his appeal is either contrary to, or an unreasonable application of, the Supreme Court precedent noted above, this Court recommends that the second ground in the Amended Petition be **denied**.

### c. Prosecutorial Misconduct

In his third ground, Tolliver contends that the assistant district attorney made several

"improper, inflammatory remarks during closing arguments," including his statement that the conviction of Tolliver was necessary to ensure the safety of the community.  Am. Pet., Ground Three.  Petitioner also contends that in his summation, the prosecutor improperly vouched for the veracity of Talbert Simpson's testimony and wrongfully referred to a lie detector test administered to that witness prior to trial.  *Id.*

A criminal defendant's right to a fair trial is mandated by the Due Process Clause of the United States Constitution.  *Albright v. Oliver*, 510 U.S. 266, 273 n.6 (1994).  For *habeas* relief to be granted based on a claim of prosecutorial misconduct, however, the alleged misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  Since a defendant's right to a fair trial is clearly established, *see Williams v. Walker*, 2001 WL 1352105, at *2 (E.D.N.Y. Oct. 31, 2001); *Porter v. Kelly*, 2000 WL 1804545, at *4 (E.D.N.Y. Dec. 5, 2000); *Concepcion v. Portuondo*, 1999 WL 604951, at *4 (S.D.N.Y. Aug. 10, 1999), Tolliver can only prevail on his third ground for relief if he demonstrates that the Appellate Division's adjudication of his claim alleging prosecutorial misconduct is either contrary to, or involved an unreasonable application of, the above-referenced Supreme Court precedent.

As stated above, Petitioner charges that the prosecutor made several improper remarks during his summation.  This Court has reviewed the summations delivered by both counsel and recites the relevant portion of the transcript below:

| | |
|---|---|
| **People:** | We are all part of the same community of Onondaga County and part of that community is the community around Cherry Street where people live and work every day. . . . You heard from . . . people that have to live and work in that community and what our community needs now in this case, what is called out for in this case is justice. |
| | You heard about Talbert Simpson.  Talbert Simpson somehow got a deal.  Talbert Simpson's murder charge is being dismissed.  He got a deal.  I submit to you that Tablert [sic] Simpson did not get a deal.  Talbert Simpson, it was determined that what he was telling us was truthful. |
| **Defense:** | Your Honor, I object to this, Counsel is testifying from facts that are not in evidence.  He is testifying to reasons that the District Attorney may have had to dismiss the charges. |
| **People:** | Your Honor, if I may – |
| **Court:** | Okay, but you have got to stay with what has been testified to in this courtroom. |
| **People:** | I submit to you folks, what Talbert Simpson got, for Talbert Simpson, was justice.  He got justice because, as you heard from this witness stand, and the proof in this case, he did not murder Marshall Solomon.  He got justice and now I stand before you and I'm going to ask you for justice.  Justice for this Defendant. . . . Justice for Marshall Solomon. |

Trial Tr. at pp. 1030-32.

The Fourth Department considered Tolliver's claims and, considering all the comments in their totality, found that the comments were either a "fair comment on the evidence or fair response to defense contentions."  *See People v. Tolliver*, 630 N.Y.S.2d at 183 (citations omitted).  The *Tolliver* court further concluded that "[t]o the extent that some of the prosecutor's remarks were improper, they were not so egregious to require reversal."  *Id*.; *see also People v. Tolliver*, 701 N.Y.S.2d 206, 207 (N.Y. App. Div., 4th Dep't. 1999) (reviewing Tolliver's *de novo* appeal and ruling that "[a]lthough the prosecutor improperly made a "safe streets" comment by urging the jury to do justice for the safety of the neighborhood where the crime was committed . . . that isolated

21

comment was not so egregious as to deprive defendant of a fair trial. . . . [and t]he remaining comments challenged by defendant were fair comment on the evidence or fair response to the comments of defense counsel and did not constitute misconduct." (citations omitted)).

To prevail on a claim of prosecutorial misconduct, a petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (quoting *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994)); *see also Ramirez v. Poole*, 2005 WL 1123775, at *9 (E.D.N.Y. May 9, 2005) (quoting *Bentley*).

Assuming, *arguendo*, that the above-quoted portion of the prosecution's summation was inappropriate, this Court agrees with the Appellate Division that the misconduct was not so severe or pervasive as to deprive Tolliver of his right to fair trial.  *E.g.*, *People v. Halm*, 579 N.Y.S.2d 765, 766 (N.Y. App. Div., 3d Dep't 1992) (prosecutor's summation, which included statement that child-victims in sodomy trial were "Kids.  Your kids.  My kids.  Our Kids.  The youth of America" did not constitute prosecutorial misconduct), *aff'd*, 611 N.E.2d 281 (NY 1993); *see also Roman v. Filion*, 2005 WL 1383167, at *18 (S.D.N.Y. June 10, 2005) (quoting *Halm* and discussing New York State Law in the context of permissible statements made during summation which are a fair comment of the evidence or fair response to remarks made by defense counsel on summation).  In this regard, we note that substantial evidence was adduced at trial which implicated Tolliver in the murder of Solomon, including Petitioner's own incriminating statements concerning his involvement in the homicide.  *See* Trial Tr. at p. 547.

We also note that the prosecutor did not, as Tolliver suggests, improperly vouch for Talbert Simpson as a witness.  Instead, it appears to this Court that the prosecutor's comments were a fair

response to the closing argument of defense counsel, who challenged the credibility of Simpson by classifying him as an individual who had a prior felony conviction, was present at the scene of the homicide, and had "got[ten] a ticket out" of a potential homicide charge by testifying against Tolliver. *Id*. at pp. 1000-01. Such statement, therefore, was a proper response to the attack on the people's witness's credibility. *See, e.g.*, *Roman v. Filion*, 2005 WL 1383167, at *18 ("[T]he prosecutor's closing statement must be evaluated in light of the defense summation, which put into issue [] character and credibility and justified the People's response." (quoting *People v. Halm*, 611 N.E.2d at 282)).

With respect to Tolliver's claim regarding the "test" to which the prosecutor referred during the cross-examination of Clarke, as this Court has previously noted, trial counsel's objection to this line of questioning was overruled by the trial court. *Id* .at p. 813. This Court cannot conclude that the prosecutor's <u>ostensible</u> reference on summation, if indeed it was such a reference, to the lie detector test administered to Talbert Simpson so infected Tolliver's trial with unfairness as to make his conviction on the charges in the Indictment a denial of due process. *E.g.*, *Samper v. Greiner*, 2002 WL 334466, at *6 (S.D.N.Y. Mar. 1, 2002) ("In evaluating a claim of prosecutorial misconduct in a petition for habeas corpus relief, the appropriate standard of review is whether the prosecution engaged in 'egregious misconduct . . . amounting to a denial of constitutional due process rights.'") (quoting *Blissett v. LeFevre*, 924 F.2d 434, 440 (2d Cir. 1991)).

Thus, Tolliver has failed to establish that comments made during the prosecution's closing argument deprived Petitioner of his right to a fair trial and, accordingly, Tolliver has failed to demonstrate that the Fourth Department's denial of this aspect of his appeal is either contrary to, or represents an unreasonable application of, Supreme Court precedent. Therefore, the Court

recommends that the third ground in the Amended Petition be **denied**.  *See, e.g.*, *Miranda v. Bennett*, 322 F.3d at 180 (claims alleging prosecutorial misconduct must be assessed "in the context of the entire trial"); *Fletcher v. Mann*, 956 F. Supp. 168, 173 (N.D.N.Y.) (Scullin, J.), *aff'd*, 165 F.3d 13 (2d Cir. 1998) (denying *habeas* claim alleging prosecutorial misconduct).

### B. Unexhausted Claims

In his first ground for relief, in addition to the claims alleging ineffective assistance of counsel referenced above, Tolliver also argues that his counsel did not object to the trial court's failure to disclose the content of notes the court received from the jury during the criminal trial. Am. Pet., Ground One.  Additionally, Petitioner argues that his trial attorney wrongfully failed to retain a ballistics expert to "contradict the testimony of the prosecution's expert." *Id*.  In his fourth ground for relief, Petitioner argues that he was denied his due process right to a fair trial because he was "compelled to appear before the jury in his prison clothing, thereby suggesting [that] the court believed he was a dangerous person."  Am. Pet., Ground Four.  Respondent argues that these claims have not been exhausted by Tolliver.  Dkt. No. 17 at pp. 7-8.

The record reflects that Tolliver did not claim in any state court challenge to his conviction that his trial counsel was ineffective because he did not object to the trial court's failure to disclose the content of notes that court received from the jury.  Additionally, although Tolliver argued in his January 1995 CPL Motion that his trial counsel rendered ineffective assistance because he failed to consult with or utilize at trial a ballistics expert, *see id.* at (unnumbered) pp. 10-11, Tolliver did not re-assert this claim in his *de novo* appeal. *De Novo* App. Br. at pp. 23-52.  Nor has he demonstrated

that he raised this argument in any other state court challenge to his conviction.[14]  Therefore, both of

these theories in support of his first ground for relief are unexhausted for purposes of the present

*habeas* application.  As to Tolliver's claim relating to his appearance at trial in prison clothing, the

Court notes that although Tolliver argued in his initial appeal that at the time the jury was selected,

he was wrongfully forced to "wear[] jail clothes," *see* Initial App. Br. at pp. 30-34; *see also* Trial Tr.

at p. 2, Tolliver never re-asserted this appellate claim in his *de novo* appeal.  *See De Novo* App. Br.

at pp. 23-52.  Nor has Tolliver claimed that he raised this argument in any other state court

challenge to his conviction.  Therefore, the claim raised in Petitioner's fourth ground for relief is

also unexhausted for purposes of this action.

Prior to seeking federal *habeas* relief, a petitioner must exhaust available state remedies, or

demonstrate that there is either an absence of available state remedies or that such remedies cannot

adequately protect petitioner's rights.  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28

U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  The exhaustion doctrine

recognizes "respect for our dual judicial system and concern for harmonious relations between the

two adjudicatory institutions."  *Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 191

(2d Cir. 1982) (*en banc*).

Although the above-referenced claims have plainly not been exhausted by Tolliver, a federal

court may find that there is an absence of available state remedies "if it is clear that the unexhausted

claim is procedurally barred by state law and, as such, its presentation in the state forum would be

---

[14] *Habeas corpus* petitioners bear the burden of demonstrating that they have exhausted available state remedies.  *See Cruz v. Artuz*, 2002 WL 1359386, at *8 (E.D.N.Y. June 4, 2002) (citing *Colon v. Johnson*, 19 F. Supp. 2d 112, 119-20 (S.D.N.Y. 1998) (other citation omitted)); *Ruine v. Walsh*, 2002 WL 1349713, at *2 (S.D.N.Y. June 19, 2002) (citing *Colon*).

futile." *Aparicio v. Artuz*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997));

*Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).[15]   Therefore, this Court must determine whether

it would be futile for Tolliver to present the above-mentioned arguments to the state courts.

      Tolliver cannot now pursue the above claims through another appeal to the Fourth

Department.  *See Aparicio v. Artuz*, 269 F.3d at 91 (citations omitted).  Moreover, since "New York

does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed

to raise the issue on direct appeal," *id.* (citing CPL § 440.10(2)(c)), Petitioner cannot now properly

raise any of the foregoing claims, which are all based on matters contained in the state court record,

in a third motion to vacate his judgment of conviction pursuant to CPL § 440.10.  *See Aparicio v.

Artuz*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)).  These claims are

therefore "deemed exhausted" for purposes of Petitioner's *habeas* application.  *Spence v.

Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v.

Greiner*, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).  Although these claims are

"deemed exhausted," they are also procedurally defaulted.  *See Aparicio v. Artuz*, 269 F.3d at 90

(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *Bossett v. Walker*, 41 F.3d at 828-29;

*Senor v. Greiner*, 2002 WL 31102612, at *10.

      The circumstances under which a federal court may properly consider the substance of

procedurally defaulted claims are quite limited; such claims may only be addressed where the

petitioner can establish **both** cause for the procedural default **and** resulting prejudice, or

---

[15] Under the AEDPA, a federal district court has the authority to deny (but not grant) an unexhausted claim on
the merits, and consider the exhausted claims on the merits.  *Aparicio v. Artuz*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*,
992 F. Supp. 685, 687 (S.D.N.Y. 1998).

alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[16]

*Dixon v. Miller*, 293 F.3d 74, 80-81 (2d Cir. 2002) (citing *Coleman v. Thompson*); *St. Helen v.*

*Senkowski*, 374 F.3d 181, 184 (2d Cir.), *cert. denied sub nom.*, *St. Helen v. Miller*, ___ U.S. ___ ,

125 S.Ct 871 (2005) ("In the case of procedural default (including where an unexhausted claim no

longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the

defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'")

(quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998) (other citations omitted)); *see generally*

*Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

 To establish "cause," a petitioner must show that some objective external factor impeded his

ability to either comply with the relevant procedural rule or fully exhaust his federal claims.  *See*

*Coleman v. Thompson*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Doleo*

*v. Reynolds*, 2002 WL 922260, at *3.  Examples of external factors include "interference by

officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not

reasonably available" at trial or on direct appeal.  *Murray v. Carrier*, 477 U.S. at 488; *Bossett*, 41

F.3d at 829 (citing *Murray v. Carrier*); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir.

1992); *Lovacco v. Stinson*, 2004 WL 1373167, at *3 (E.D.N.Y. June 11, 2004) (citing *Murray v.*

*Carrier*).[17]

 Nowhere in his Amended Petition – nor any other submission filed with this Court by

Petitioner – has Tolliver established cause for his failure to exhaust any of the above-referenced

---

 [16] A fundamental miscarriage of justice in turn exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002).

 [17] However, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman v. Thompson*, 501 U.S. at 752-53 (quoting *Murray v. Carrier*, 477 U.S. at 488).

claims.[18]  Since he has not established cause for his procedural default, this Court need not decide

whether he suffered prejudice, because federal *habeas* relief is generally unavailable as to

procedurally barred claims unless **both** cause and prejudice is demonstrated.  *Stepney v. Lopes*, 760

F.2d 40, 45 (2d Cir. 1985); *Miller v. Bennett*, 2004 WL 1573874, at *10 (W.D.N.Y. May 22, 2004)

("Since petitioner cannot show cause for his procedural default, this court need not reach the

question of whether he can show prejudice.") (citing *Stepney*); *Jones v. Barkley*, 2004 WL 437468,

at *9 (N.D.N.Y. Feb. 27, 2004) (collecting cases); *McLeod v. Moscicki*, 2003 WL 22427757, at *8

(S.D.N.Y. Oct. 22, 2003) (Francis, M.J.) (citing *Murray v. Carrier*, 477 U.S. at 494); *Pou v. Keane*,

977 F.Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.).  Finally, Petitioner has presented no evidence

that he is actually innocent of the crimes of which he was convicted, and the evidence adduced at

trial of his guilt of those crimes was substantial.  Therefore, the Court recommends that the above-

referenced claims be **denied** as procedurally defaulted.[19]

---

[18] As discussed more fully above, Petitioner filed numerous *pro se* collateral challenges to his conviction, one of which resulted in the grant of a *de novo* appeal.  Thus, it is clear that Petitioner was not prevented from challenging the propriety of his conviction in the state courts.

[19] As noted above, Tolliver's claim regarding counsel's failure to retain a ballistics expert, as well as Petitioner's argument regarding his appearance at trial in "prison clothing," were raised by Tolliver in challenges filed regarding his conviction prior to his *de novo* appeal.  *See* Jan. 1995 CPL Motion at (unnumbered) pp. 10-11; Initial App. Br. at pp. 30-34.  Since the Appellate Division subsequently vacated its prior order affirming Tolliver's conviction, we believe that exhaustion would be satisfied upon presenting all claims in his *de novo* appeal.  However, even if those challenges constituted full exhaustion of those claims for purposes of the present *habeas* action, Petitioner would nevertheless not be entitled to the relief he seeks.  In this regard, the Court concludes that the county court's decision denying Tolliver's ineffective assistance claim based upon counsel's failure to utilize a ballistics expert in defense to the charges (Mar. 1995 Decision at pp. 2-3) is neither contrary to, nor an unreasonable application of, *Strickland* and its progeny.

Additionally, we note that the Fourth Department ruled in its initial review that the record does not support Tolliver's contention that his brief appearance in court in jail clothing prejudiced him.  *People v. Tolliver*, 630 N.Y.S.2d 182-83 (noting that the county court stated on the record that there was "no sign" that the prisoner was dressed in jail clothing).  Despite our contention that this ground has not been exhausted, this Court reviewed the record and similarly notes that, upon defense counsel's request to allow Tolliver the opportunity to change clothes, the trial noted there was no "sign [that Tolliver's] got jail clothes on . . . [he's wearing] a clean, blue type sport shirt."  Trial Tr. at p. 18. Nevertheless, the court granted defense's request to change clothes after "calendar."  *Id*.  When jury selection commenced thereafter, nothing more, objections or otherwise, had been placed on the record.

The Supreme Court has stated that "although the State cannot, consistently with the Fourteenth Amendment,

**WHEREFORE**, based upon the above, it is hereby

**RECOMMENDED**, that Tolliver's Amended Petition for a Writ of *Habeas Corpus* (Dkt. No. 6) be **DENIED and DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties by regular mail.

**NOTICE**: Pursuant to 28 U.S.C. § 636(b)(1), the parties have **TEN (10) DAYS** in which to file written objections to the foregoing report-recommendation. Any objections shall be filed with the Clerk. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e) and 72.

Dated: September 8, 2005
 Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

---

compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Estelle v. Williams*, 425 U.S. 501, 512-13 (1976); *United States v. Hurtado*, 47 F.3d 577, 581 (quoting and citing *Estelle*) (further noting that when a defendant is compelled to wear a prison uniform, a constitutional error "is subject to a harmless error analysis" (citation omitted)). Though the record is unclear as to whether Tolliver actually wore the prison clothes during jury selection, in light of the fact that such clothes were not clearly identifiable as jail apparel, we find that the Fourth Department's decision denying Tolliver's claim relating to the clothing he wore during a portion of his criminal trial, is not contrary to, nor an unreasonable application of, Supreme Court precedent.